**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| AMERICAN HOME MORTGAGE SERVICING, INC., on its own behalf and as Servicer for American Home Mortgage Investment Trust 2005-4A, American Home Mortgage Investment Trust 2006-1, American Home Mortgage Investment Trust 2006-3, American Home Mortgage Investment Trust 2007-1, American Home Mortgage Asset Trust 2006-1, American Home Mortgage Asset Trust 2006-3, American Home Mortgage Asset Trust 2006-4, American Home Mortgage Asset Trust 2006-5, and American Home Mortgage Asset Trust 2006-6, <br><br> Plaintiff, <br><br> vs. <br><br> TRIAD GUARANTY INSURANCE CORP., <br><br> Defendant. | **CIVIL ACTION NO. 3:09-cv-2363-M** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO STAY OR TRANSFER**

# **TABLE OF CONTENTS**

                     Page No.

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ....................................................................... 1

ARGUMENT ..................................................................................................... 2

  1  AHMSI Is Not A Party To The Delaware Case ....................................... 4

  2.  The Cases Do Not Substantially Overlap ............................................... 5

  3.  There Is No Likelihood Of Conflict With The Delaware Case ............... 8

  4.  This Court Has The Stronger Interest And Comparative
     Advantage In Deciding This Case ........................................................... 9

  5.  The Delaware Bankruptcy Court Does Not
     Have Jurisdiction Over This Dispute ..................................................... 11

  6.  A Stay Or Transfer Would Destroy AHMSI's
     Contractual and Statutory Rights ........................................................... 12

CONCLUSION ................................................................................................. 14

CERTIFICATE OF SERVICE ......................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amalgamated Gadget, L.P. v. Healthsouth Corp.*,
  No. 04-CV-198, 2004 WL 1283949 (N.D. Tex. June 9, 2004) ..................................... passim

*Buckalew v. Celanese, Ltd.*,
  No. 05-CV-315, 2005 WL 2266619 (S.D. Tex. Sept. 16, 2005) ..................................5, 6, 8, 9

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) ....................................................................................... passim

*Dallas Aerospace, Inc. v. Sierra Pacific Airlines*,
  No. 98-CV-2381, 2001 WL 880368 (N.D. Tex. July 24, 2001)........................................... 7-8

*Eastman Medical Prods., Inc. v. E.R. Squibb & Sons, Inc.*,
  199 F. Supp. 2d 590 (N.D. Tex. 2002) ...............................................................................7, 11

*Goldstein v. Dickinson*,
  No. 98-CV-1597, 1999 WL 47240 (N.D. Tex. Jan. 21, 1999) ..................................................5

*Great Am. Indem. Co. v. Rose*,
  242 F.2d 269 (5th Cir. 1957) ....................................................................................................5

*Holman v. Cook*,
  879 F. Supp. 113 (D.D.C. 1995)...............................................................................................9

*L-3 Commc'ns Integrated Sys., L.P. v. Lockheed Martin Corp.*,
  No. 07-CV-0341, 2008 WL 89659 (N.D. Tex. Jan. 8, 2008) ...................................................6

*Leonen v. Johns-Manville Corp.*, 717
  F. Supp. 272 (D.N.J. 1989) ....................................................................................................13

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)....................................................................................................................13

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir.1982) ..................................................................................................2, 3

*Paj, Inc. v. Hanover Ins. Co.*,
  243 S.W.3d 630 (Tex. 2008)...................................................................................................12

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981).................................................................................................................9

*Puckett v. U.S. Fire Ins. Co.*,
    678 S.W.2d 936 (Tex. 1984) ................................................................................................ 11

*Save Power Ltd. v. Syntek Finance Corp.*,
    121 F.3d 947 (5th Cir. 1997) ..................................................................................... 3, 5, 7, 8

*TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*,
    91 F.3d 1 (1st Cir. 1996) ................................................................................................... 3, 8

*Wells Fargo Bank, N.A. v. West Coast Life Ins. Co.*,
    631 F. Supp. 2d 844 (N.D. Tex. 2009) .............................................................................. 2, 6, 7

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) ............................................................................................ 2, 5, 7

*Wolf Designs, Inc. v. Donald McEvoy Ltd.*,
    355 F. Supp. 2d 848 (N.D. Tex. 2005) ............................................................................ 11, 12

**STATUTES**

10 Del. C. § 3104(c), (j) ............................................................................................................. 12

Tex. Ins. Code § 982.303 ............................................................................................... 1, 11, 12

Tex. Ins. Code § 982.305 ...................................................................................................... 1, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(b)(3) ................................................................................................................ 4

Fed. R. Civ. P. 23(c)(2)(B)(5) ...................................................................................................... 4

Fed. R. Civ. P. 26 ....................................................................................................................... 10

Wright, Miller & Cooper, *Fed. Prac. and Proc., Jurisd. 3d* § 3828.2 .......................................... 9

Plaintiff American Home Mortgage Servicing, Inc. ("Plaintiff" or "AHMSI") files this Memorandum of Law in Opposition to Defendant Triad Guaranty Insurance Corp. ("Defendant" or "Triad")'s Motion to Stay or Transfer (DE # 13), and in opposition thereto states as follows:

## PRELIMINARY STATEMENT

This suit concerns Defendant's refusal to pay insurance claims on fifteen mortgage insurance certificates issued to Plaintiff AHMSI in Texas because Plaintiff had purportedly failed to give proper notice under the Master Policies. Plaintiff is seeking two basic forms of relief—payment on the fifteen claims wrongfully denied, and to prevent Triad from denying other claims on the basis of purported late filing unless it can establish prejudice. (*See* Complaint ¶¶ 84-85, 99). Triad admits that it had notice of the mortgage defaults for the properties at issue long before the claims were formally made. (Answer ¶ 16 ("Defendant admits that for the 15 loans made the basis of this action, Defendant received timely notice of default of the underlying mortgage.")). Plaintiff, as a Texas insured, has a statutory right not to have to litigate claims involving its insurance contracts in an out-of-state court (Tex. Ins. Code § 982.305), and Triad, by issuing Texas insurance contracts, has waived the right to litigate such claims elsewhere (§ 982.303).

Nevertheless, Triad has moved to stay or transfer this case in favor of an adversary proceeding that it has filed in Delaware bankruptcy court, claiming that the Delaware case was "first-filed." Triad argues that if the master policies are declared *void ab initio* in Delaware, this Case would be rendered unnecessary. This is simply not true.

AHMSI is not currently a party to the Delaware case and the issues raised therein do not substantially overlap with the issues in this case. Triad denied the claims at issue in this Case because the claims allegedly did not comply with certain policy provisions, not on the basis that

the Master Policies are *void ab initio* and that this in turn would somehow void the valid insurance certificates in this Case—certificates apparently indistinguishable from others on which Triad had been paying claims when it denied these claims (and so obviously did not believe to be void). The fact that Triad suddenly asserts, as one of ten purported affirmative defenses, that the "policies and certificates" are supposedly void, does not change the fact that this is a dispute over fifteen claims made under Texas insurance certificates. In short, the Delaware case is not a "first-filed" case because it is wholly distinct from this Case. Moreover, the Delaware bankruptcy court would not have jurisdiction over this case, Triad is not actively prosecuting the other case, AHMSI has a statutory right to a Texas forum to vindicate its rights as a Texas insured, and Triad has waived any right it may have had to litigate these policies elsewhere.

## ARGUMENT

"The first-to-file rule is a discretionary doctrine." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999); *Wells Fargo Bank, N.A. v. West Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 846 (N.D. Tex. 2009) (same). Under the doctrine, "'when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action.'" *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985) (quoting *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982)).

Where, however, "the overlap between the suits is less than complete, in determining whether to transfer the case the court considers the extent of the overlap, the likelihood of conflict, and the comparative advantage and interest of each forum in resolving the dispute." *Amalgamated Gadget, L.P. v. Healthsouth Corp.*, No. 04-CV-198, 2004 WL 1283949, at *1

(N.D. Tex. June 9, 2004) (citing *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 951 (5th Cir. 1997)); *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) ("where the overlap . . . is less than complete, the judgment is made case by case") (cited with approval in *Save Power*).

"[T]he likelihood of a jurisdictional dispute in the first-filed court may [also] be a factor to consider in applying the rule." *Cadle Co.*, 174 F.3d at 605; *see also Amalgamated Gadget*, 2004 WL 1283949 at *1 ("The court also considers the likelihood of a jurisdictional dispute in the first-filed court.") (citing *Cadle Co.*).

Finally, even if all of the usual factors favored application of the first-to-file rule, the rule should not be applied where "exceptional circumstances exist," such as where the plaintiff would not be bound by the rulings in the other case and where application of the rule "would so disadvantage plaintiff that the ends of justice would not be served." *See Amalgamated Gadget*, 2004 WL 1283949 at *2; *see also Pacesetter Systems*, 678 F.2d at 95 ("However, this "first to file" rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration.").

The "first-to-file" rule does not apply and this Case should not be stayed or transferred because: 1) the result in Delaware bankruptcy court can have no impact on this Case since AHMSI is not a party to that case and would not be bound by any ruling; 2) the issues in this Case do not substantially overlap with those in the Delaware case; 3) there is no likelihood of conflict; 4) this Court has a greater interest and a comparative advantage in deciding this Case; 5) the Delaware bankruptcy court would not have jurisdiction over this Case; and 6) a stay or transfer would destroy AHMSI's rights.

### 1.  AHMSI is Not a Party to the Delaware Case

The Motion should be denied because Plaintiff is not a party to the Delaware case and would not be bound by any ruling there.  Triad filed suit in Delaware bankruptcy court against three bankrupt companies, American Home Mortgage Investment Corp. ("AHMIC"), American Home Mortgage Corp. ("AHMC"), and AHM SV, Inc. ("AHM SV"), seeking (with no valid basis) rescission of almost three hundred mortgage insurance master policies, and therefore of the "over 29,000" individual certificates issued thereunder.  Triad attempts to confuse matters by referring to Delaware defendant AHM SV as "AHMSI," which was the name of that company before bankruptcy.  AHM SV is not related to Plaintiff AHMSI, however, and AHMSI is not a party to the Delaware case, nor is it affiliated with any party to the Delaware proceeding.

On August 6, 2007, the former American Home Mortgage Servicing, Inc., n/k/a AHM SV, Inc., a Maryland corporation, entered a consolidated bankruptcy, Case No. 07-11047 (Chapter 11, D. Del August 6,2007) ("Bankruptcy Case").

Prior to April 11, 2008, AHMSI—the Plaintiff here—was known as AH Mortgage Acquisition Co., Inc.  On that date, AH Mortgage Acquisition Co., Inc., acquired the servicing business of American Home Mortgage Servicing, Inc., including the right to use the name "American Home Mortgage Servicing, Inc." *See* Bankruptcy Case, Docket No. 3812, Appendix pp. 2-3.

Plaintiff is not a party to and has not been served in the Delaware case,[1] and so the first-to-file rule does not apply.[2]  The insurance certificates at issue in this Case are not part of the

---

[1] Triad purports to name a defendant class in the Delaware case, but no such class has been certified.  It is apparent from the allegations in the Delaware complaint that Triad seeks to name a defendant class under Fed. R. Civ. P. 23(b)(3).  (Del. Comp. ¶¶ 62, 65).  Even if a class were to be certified, however, AHMSI would have the right to opt out.  *See* Fed. R. Civ. P. 23(c)(2)(B)(5).  Moreover, it is apparent from the face of the Delaware complaint that AHMSI would not be part of any class, since Triad claims not to know the identities of the owners of the individual loans insured by certificates issued under the master

bankruptcy estate of the defendants in Delaware (nor are the master policies), and even if the bankruptcy court were to accept Triad's creative rescission arguments, an order in that case would not bind Plaintiff, who is not a party to that case, and would have no impact on this Case whatsoever. *See Buckalew v. Celanese, Ltd.*, No. 05-CV-315, 2005 WL 2266619, at *3 (S.D. Tex. Sept. 16, 2005) ("Defendants failed to show that if inconsistent rulings are issued, that problems and conflicts will arise. There is no evidence that a ruling in one of the causes of action will have any effect on the rulings of or outcome in the other cause of action.") (distinguishing *Save Power*).

### 2. The Cases Do Not Substantially Overlap

The Motion should also be denied because the cases do not substantially overlap. Courts have found that cases do not substantially overlap where the "claims in the two cases are not identical." *See Buckalew* 2005 WL 2266619 at *3; *see also Goldstein v. Dickinson*, No. 98-CV-1597, 1999 WL 47240, at *2 (N.D. Tex. Jan. 21, 1999) (no substantial overlap because disputes

---

policies. (¶¶ 58-61). *See*, *e.g.*, *Great Am. Indem. Co. v. Rose*, 242 F.2d 269, 271 (5th Cir. 1957) ("Pleadings in other cases are admissible to be considered with other evidence against the pleader."). Yet Triad is in frequent contact with AHMSI regarding the loans at issue in this Case, and the certificates bear the names of the Trusts that own each. If Triad wanted to invalidate AHMSI's policies, it needed to sue AHMSI in Texas.

[2] *Save Power* is not to the contrary. In that case, the plaintiff had filed another suit raising the same issues, which had been assigned to a different judge in the same division. The plaintiff noted the related case on its civil cover sheet and filed a motion to transfer the second suit to the same judge, which was denied. The Court of Appeals held that "in view of all the facts of th[e] case," transfer was appropriate despite the absence of "[c]omplete identity of the parties" because the defendant in the second suit had filed (and then withdrawn) a motion to intervene in the first suit and because both actions "center[ed] on" the same question. *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 951-52 (5th Cir. 1997); *see also id.* at 951 ("incomplete identity of parties does not mandate that two 'essentially identical' actions remain pending simultaneously where complete relief was nevertheless available in one forum") (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 731 n.5 (5th Cir. 1985)); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (appellant did not raise issue whether incomplete identity of parties precludes finding of substantial overlap); *Buckalew v. Celanese, Ltd.*, No. 05-CV-315, 2005 WL 2266619, at *3 (S.D. Tex. Sept. 16, 2005) ("the fact that the parties are different cuts against an argument for substantial overlap").

5

between same parties over same business were based on two different contracts). Cases also do not substantially overlap where they concern different key facts, such as operative time periods. *See L-3 Commc'ns Integrated Sys., L.P. v. Lockheed Martin Corp.*, No. 07-CV-0341, 2008 WL 89659, at * 2 (N.D. Tex. Jan. 8, 2008); *Buckalew*, 2005 WL 2266619 at *3.

This Case is about a single narrow legal question, not at issue in the Delaware case, and fifteen individual insurance certificates. The Delaware case is about an alleged pattern of substandard underwriting by now-bankrupt AHM. The only commonalities are the fact that Triad is involved in both cases, that Triad chose to list the master policies pursuant to which the Insurance Certificates in this Case were made, along with hundreds of others, on an exhibit to the Delaware complaint, and that Triad has decided to assert an affirmative defense in this Case to make it look like the cases are related even though they are not. That is simply not a substantial overlap, and the motion to stay or transfer should be denied.

Defendant asserts that the facts of *Wells Fargo* "are remarkably similar to the facts of this case." (Motion at 5 (citing *Wells Fargo*, 631 F. Supp. 2d at 847-48)). Although both cases deal with insurance disputes in which the insurer sought rescission of the policies at issue, the similarities end there. In *Wells*, the two suits were "seeking the same relief," were "based on the same life insurance policies, and the same facts surrounding the applications for the[] policies." The cases "[i]nvolve[d] many of the same parties," and all of the plaintiffs in the Texas cases were named as defendants in the Florida case. Here, the Plaintiff, AHMSI, whose suit Triad is seeking to delay, is not a party to the Delaware case. In fact, the parties in *Wells* <u>agreed</u> that the actions were related and that jurisdiction obtained in either forum, and Wells Fargo merely opposed transfer on the grounds that West Coast was engaged in "forum shopping" to select an inferior (but still allowable) forum. *Wells Fargo*, 631 F. Supp. 2d at 847. Here, by contrast, the

6

Delaware case is about a completely different issue and against unrelated (and bankrupt) defendants, and the purported similarities to this Case arise not from the Complaint, but rather from an affirmative defense Triad has interposed in an attempt to manufacture substantial overlap where it does not exist. The policies in *Wells* were allegedly *void ab initio* because of alleged fraud related to those specific policies. In the Delaware bankruptcy case, by contrast, Triad makes no claim that either all of the certificates, or even the fifteen certificates at issue in this Case, were for loans not underwritten properly, but rather just a farfetched claim (which Triad apparently never wants to have adjudicated) that the Master Policies, which simply provide the framework for each individual insurance certificate, are somehow void because of alleged flaws in the underwriting of certain unidentified loans (but admittedly not all loans). In short, the cases are apples and oranges.

  The other cases cited by Defendant are likewise not to the contrary, invariably involving a "second-filed" case that is more or less a mirror image of the "first-filed" case. *See Save Power*, 121 F.3d at 951 ("Both the Original Action and the present case center on the question whether Save Power can proceed with foreclosure . . . under the terms of the Subordination Agreement."); *Cadle Co.*, 174 F.3d at 601-02 (plaintiff filed several claims in the bankruptcy court before filing suit in district court over the same debt); *West Gulf*, 751 F.2d at 724 (mirror-image suit filed in Texas, seeking declaration that New York emergency hearing panel decision was void, right after New York court refused to dismiss action to confirm the panel's decision and denied motion to transfer case to Texas); *Eastman Medical Prods., Inc. v. E.R. Squibb & Sons, Inc.*, 199 F. Supp. 2d 590, 593 (N.D. Tex. 2002) (motion to confirm arbitration award in one court, and petition to vacate, modify and correct the same arbitration award in the other court); *Dallas Aerospace, Inc. v. Sierra Pacific Airlines*, No. 98-CV-2381, Memorandum in

7

Support of Amended Motion to Dismiss, at 2 (N.D. Tex. May 3, 2001) (counter-complaint claims in second-filed case were identical to same party's claims in first-filed case) (Dkt. No. 112), *decision at* Dkt. No. 139, 2001 WL 880368 (July 24, 2001).  This makes sense, because "cases should be more than merely related" for a finding of substantial overlap.  *Buckalew*, 2005 WL 2266619 at *2 ("To hold otherwise would frustrate the well-established rule that the plaintiff's choice of forum is generally entitled to great deference.").

### 3.   There is No Likelihood of Conflict With the Delaware Case

The Motion should also be denied because there is no likelihood of conflict between this Case and the Delaware case.  *See Amalgamated Gadget*, 2004 WL 1283949 at *2 (no likely conflict because case was "not like *Save Power*, where two judges were considering the same lien subordination provision and inconsistent rulings regarding priority had already been made").  *TPM Holdings*, 91 F.3d at 4 (first-filed rule did not apply because determining validity of lis pendens based on Texas suit "could not realistically be said to interfere with the Texas court's authority or conduct of its case").

This Case concerns one legal issue:  whether an insurer may deny a purportedly late-filed claim *in toto* without alleging or establishing prejudice.  The Delaware bankruptcy court will not be considering or ruling on this issue, so there is no possibility of conflict.  Moreover, although the master policies referenced in this Case are allegedly among the hundreds at issue in the Delaware case, the Delaware bankruptcy court will not have occasion to interpret the policy provisions cited by Triad in denying the claims at issue here, since the Delaware case is about underwriting, not the filing of claims.  The facts of this Case concern fifteen specific insurance certificates and the underlying loans.  If Triad could defend on the basis of the purported invalidity of those certificates (and Plaintiff submits that it cannot), that defense would depend

8

on an individual analysis of each loan. No such analysis is envisioned in the Delaware case, which relies rather on the questionable argument that whole groups of insurance policies can be invalidated upon the showing of an alleged trend with respect to underwriting. Finally, Triad is not actively prosecuting the Delaware case, so there is no reasonable possibility of any ruling on the merits, and since AHMSI is not a party to the Delaware case, no ruling there could present a conflict with this Case. *See Holman v. Cook*, 879 F. Supp. 113, 115 (D.D.C. 1995) (where "as a practical matter . . . there is no litigation activity" in the other forum, "neither piecemeal nor duplicative litigation will result from going forward").[3]

### 4. This Court Has the Stronger Interest and Comparative Advantage in Deciding This Case

Because this Court has the stronger interest and comparative advantage in deciding this Case, the Motion should be denied. Courts generally have a strong interest in deciding the cases brought before them, arising out of both their duty to hear cases over which they have jurisdiction, and the principle that a plaintiff's choice of forum should be upheld. *See*, *e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) ("there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum"); Wright, Miller & Cooper, *Fed. Prac. and Proc., Jurisd. 3d* § 3828.2 ("Numerous cases from throughout the federal judicial system echo this 'strong presumption.'"). This interest is strongest where the case involves a citizen of the district and where the plaintiff is a "natural" plaintiff, as opposed to a natural defendant racing to the courthouse. *See Buckalew* 2005 WL 2266619 at *3 ("this Court has an interest in resolving disputes brought before it in a timely and efficient manner, especially

---

[3] In *Holman*, the practical absence of litigation activity was due to a stay in the other court. 879 F. Supp. at 115. The analysis of potential conflicts should be the same where the parties have done nothing beyond filing a complaint and have been requesting serial continuances for months.

when those suits involve local citizens"; suit had no connection to other forum other than the other case itself).

This Court has a very strong interest in deciding this Case not only because AHMSI is based in this District (and the events giving rise to the dispute occurred here as well), and not only because AHMSI is a "natural" plaintiff, suing for breach of an insurance contract, but particularly because, as a Texas insured, AHMSI has a statutory right to a Texas forum for its suit. *See* Tex. Ins. Code § 982.305 ("An action involving a contract entered into in this state between a foreign or alien insurance company and a resident of this state may not be brought in or transferred to a court in another state without the consent of the resident of this state.").

The Delaware bankruptcy court, on the other hand, has no interest at all in this Case or in the dispute underlying it. The certificates at issue here are not part of any bankruptcy estate, and none of the bankrupt defendants in the Delaware case is the insured under them. Whether Triad has to pay the claims at issue here will have no impact on any of the Delaware defendants, and the legal dispute here—whether a supposedly late claim can be denied absent prejudice to the insurer—is wholly separate from the dispute in the Delaware case. Moreover, while this Case is at issue (Triad having filed its Answer January 26, 2010), and the Joint Scheduling Report is due March 10, 2010, the docket of the Delaware proceedings, of which this Court may take judicial notice (Appendix pp. 4-7), reflects that no responsive pleading has yet been filed in that case and in fact no action taken at all except repeated motions to delay. *See Amalgamated Gadget*, 2004 WL 1283949 at *2 ("The documents submitted by defendant reflect that the [first-filed case] is of such a massive scope that little substantive progress has been made. . . . There is no indication that the cases will be resolved any time soon."). Even once the Delaware bankruptcy court proceedings commence, any judgment or order of that court would not be final, but only a

10

recommendation to the Delaware district court (since that case is certainly not part of the bankruptcy court's "core" jurisdiction).

Finally, this Court has a comparative advantage in deciding this Case, not only because of its familiarity with Texas law, which governs Texas insurance policies, but also because this Court is in a better position to assess Texas public policy, which would bar any attempt to void Texas insurance certificates en masse without any allegation that something was wrong with those particular certificates. *See*, *e.g.*, *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938–39 (Tex. 1984) (even if insurance contract is clear, a court may reject the plain meaning if enforcement of the provision would be against public policy).

> 5. The Delaware Bankruptcy Court Does Not
>    Have Jurisdiction Over This Dispute

The Court may consider the Delaware bankruptcy court's apparent lack of jurisdiction and deny the motion to transfer on that basis. *See Cadle Co.*, 174 F.3d at 605; *Amalgamated Gadget*, 2004 WL 1283949 at *1.

The Delaware bankruptcy court would not have jurisdiction over this dispute, both because the master policies and insurance certificates at issue are not part of the bankruptcy estate, and because this Case could not have been brought in Delaware in the first place. *See Wolf Designs, Inc. v. Donald McEvoy Ltd.*, 355 F. Supp. 2d 848, 852 (N.D. Tex. 2005) (movant seeking transfer must demonstrate that the case could have been brought in the other district); *Eastman Medical Prods.*, 199 F. Supp. 2d at 596 ("A court may not transfer a case unless the plaintiff could have sued all of the defendants in the transferee court."). Moreover, while Triad has not sued AHMSI in Delaware, it clearly could not do so, since a Texas insured may not be sued over a Texas insurance policy outside of Texas without its consent. *See* Tex. Ins. Code §982.303 (a foreign insurance company that issues a policy in Texas is considered to have agreed

to comply with the Texas Insurance Code); *id.* § 982.305 (no suit on Texas insurance policy outside Texas and no transfer of a suit out of Texas without the insured's consent).

The master policies and insurance certificates that are the subject of this Case were transferred to AHMSI pursuant to the sale of assets of AHM SV, described above. Triad has been interacting with AHMSI as its insured for some time and it has paid claims to AHMSI, and never has Triad suggested that AHMSI was not the insured or that the policies somehow still belonged to AHM SV (which they do not).

Moreover, AHMSI could not have sued Triad in Delaware bankruptcy court because there is no bankruptcy jurisdiction over this dispute, and because there would not have been personal jurisdiction over Triad in Delaware in this Case under the Delaware Long-Arm Statute. *See* 10 Del. C. § 3104(c), (j) (jurisdiction over non-resident defendant must arise from a jurisdictional act performed in Delaware (with exception not relevant here); no supplemental jurisdiction); *Wolf Designs*, 355 F. Supp. 2d at 851 ("That the defendant later consents to jurisdiction in another forum is irrelevant.").

      6.   A Stay or Transfer Would Destroy AHMSI's Contractual and Statutory Rights

Finally, the Motion should be denied because a stay or transfer would destroy both Plaintiff's rights under the insurance certificates and its statutory right to a Texas forum.

Triad owes Plaintiff a substantial amount of money for wrongfully denying claims despite suffering no prejudice, in contravention of Texas law. *See Paj, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636-37 (Tex. 2008). Triad is in runoff and under regulatory supervision, and its parent company has been delisted from the NASDAQ stock exchange. *See* Triad Guaranty, Inc. Form 10-Q, Sept. 30, 2009, at 4; Form 8-K, Dec. 28, 2009; Form 8-K, Dec. 1, 2009 (relevant excerpts at Appendix pp. 8-19). Given Triad's failure to prosecute the Delaware case and its

dwindling resources (and given the Delaware bankruptcy court's lack of jurisdiction over this dispute and the staggering scope of Triad's claims in that case), a stay would not only indefinitely delay resolution of AHMSI's claims, it would effectively mean that AHMSI could never recover the damages that it is owed.  *See Leonen v. Johns-Manville Corp.,* 717 F. Supp. 272, 288 (D.N.J. 1989) ("Plaintiff has a right to see a timely resolution of his cause of action."); *cf. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("a stay is as much a refusal to exercise federal jurisdiction as a dismissal.").

While Texas law—which applies of its own right but with which Triad also agreed to comply—clearly precludes transferring this Case to Delaware, it also makes clear that Plaintiff has a right to have its case resolved in Texas.  Since the Delaware case would theoretically require individual consideration of 29,000 loans, as opposed to only fifteen in this Case, and given Triad's shaky financial status, a stay would likely mean that Plaintiff would never see its day in court.  *See Amalgamated Gadget*, 2004 WL 1283949 at *2 (refusing to transfer second-filed case where "pursuit of this action will not trench upon the authority of a sister court or violate principles of sound judicial administration, but transferring the case would destroy plaintiff's lawsuit").

## **CONCLUSION**

For the reasons set forth above, Plaintiff American Home Mortgage Servicing, Inc., respectfully requests that this Court deny Defendant's Motion to Stay or Transfer.

Respectfully submitted,

AMERICAN HOME MORTGAGE SERVICING, INC.

By

February 23, 2010                   /s/ David M. Souders

Mitchel H. Kider, *pro hac vice* (DC Bar #358531)
David M. Souders, *pro hac vice* (DC Bar #441491)
Michael Y. Kieval, *pro hac vice* (DC Bar #974274)
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street, N.W., Floor 5
Washington, DC 20036
Tel. (202) 628-2000
Fax  (202) 628-2011
*kider@wbsk.com*
*souders@wbsk.com*
*kieval@wbsk.com*

Troy W. Garris (Tex. Bar # 24007226)
WEINER BRODSKY SIDMAN KIDER PC
2904 Corporate Circle, Suite 128
Flower Mound, TX  75028
Tel. (469) 635-7539
Fax  (972) 410-0209
*garris@wbsk.com*

F:\99745\015\Opposition to Motion to Stay or Transfer 2-23-10 (MYK)v3.4.docx

## **CERTIFICATE OF SERVICE**

I certify that on the 23rd day of February, 2010, I will electronically file the foregoing with the Clerk of the Court using CM/ECF system, which will then send electronic copies to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

                              /s/
                     David M. Souders