IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN HOME MORTGAGE SERVICING, INC., on its own behalf and as Servicer for American Home Mortgage Investment Trust 2005-4A, American Home Mortgage Investment Trust 2006-1, American Home Mortgage Investment Trust 2006-3, American Home Mortgage Investment Trust 2007-1, American Home Mortgage Asset Trust 2006-1, American Home Mortgage Asset Trust 2006-3, American Home Mortgage Asset Trust 2006-4, American Home Mortgage Asset Trust 2006-5, and American Home Mortgage Asset Trust 2006-6, <br><br> Plaintiff, <br> v. <br><br> TRIAD GUARANTY INSURANCE CORP., <br><br> Defendant. | § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:09-CV-2363-M |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Stay or Transfer [Docket Entry #13]. Having considered the Motions, the parties' briefing, and the applicable law, the Court finds that the Motion should be GRANTED, insofar as it requests a STAY of this case pending determination by the United States Bankruptcy Court for the District of Delaware (hereinafter the "Delaware court") of the adversary proceeding styled *Triad Guaranty Insurance Corp. v. American Home Mortgage Investment Corp., et al.*, Adversary Proceeding Number 09-52193, administered under Chapter 11 Case Number 07-11047, *In re American Home Mortgage Holdings, Inc.* (hereinafter the "Delaware case").

I. BACKGROUND AND PROCEDURAL HISTORY

The Delaware case was instituted on September 4, 2009, when Defendant Triad Guaranty Insurance Corporation ("Triad") sued American Home Mortgage Investment Corporation, American Home Mortgage Corporation, and AHM SV, Inc. (collectively "AHM") in the Delaware court, seeking, among other things, rescission of certain insurance policies and related declaratory relief arising from AHM's alleged failure to follow insurance underwriting guidelines approved by Triad, resulting in Triad's issuance of mortgage insurance for unqualified loans. Triad policies 43-0216-0020 and 43-0216-0026 (the "Master Policies") are among the policies for which Triad is seeking rescission in the Delaware case.

On December 11, 2009, Plaintiff American Home Mortgage Servicing, Inc. ("AHMSI"), which is not a party in the Delaware case, filed this action, seeking damages and a declaratory judgment arising out of Triad's refusal to pay insurance claims on fifteen mortgage insurance certificates issued pursuant to the Master Policies. Before April 11, 2008, AHMSI was known as AH Mortgage Acquisition Co., Inc. On that date, AHMSI acquired the servicing business of American Home Mortgage Servicing, Inc., including the right to use that name. The former American Home Mortgage Servicing, Inc. then became AHM SV, Inc., joined a consolidated bankruptcy, and is now one of the defendants in the Delaware case.

On the basis of the first-to-file rule, Triad now moves to stay this case pending resolution of the Delaware case, or in the alternative, to transfer this case to the Delaware court.

II. LEGAL STANDARD

The first-to-file rule is a discretionary doctrine, about which the Fifth Circuit has stated:

> Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. The rule rests on principles of comity and sound judicial administration. "The concern manifestly is to avoid the waste

of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[1]

The Court must therefore determine the likelihood of substantial overlap between the issues raised in this case and the issues before the Delaware court in the Delaware case. The rule does not require that the cases be identical; the crucial inquiry is one of "substantial overlap."[2]

The court in which an action is first filed is the appropriate court to determine how and whether subsequently filed cases involving substantially similar issues should proceed.[3] Therefore, if this Court determines that this case substantially overlaps with the Delaware case, the proper course of action is to transfer this case to the Delaware court.[4]

## III. ANALYSIS

Triad argues that substantial overlap exists because the Master Policies, the validity of which is challenged in the Delaware case, undergird AHMSI's claims in this action. Triad's position is that there will be no further case or controversy between AHMSI and Triad in this action if the Delaware court declares the Master Policies to be void *ab initio*. AHMSI argues that Triad only raises the validity issue as an affirmative defense in this action, and that there is no further overlap between this case and the Delaware case.

The narrow question presented by AHMSI in this case is whether Triad may deny insurance claims, purportedly filed late, without alleging or establishing prejudice. However, the validity of the contracts on which those claims are based is a central issue that is most efficiently addressed before reaching AHMSI's claims. Application of the first-to-file rule does not require

---

[1] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (citations omitted).
[2] *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).
[3] *Wells Fargo Bank, N.A. v. West Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 846 (N.D. Tex. 2009) (Lynn, J.); *see also Cadle Co.*, 174 F.3d at 606 ("[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.").
[4] *Wells Fargo*, 631 F. Supp. 2d at 846-47 (citing *Cadle Co.*, 174 F.3d at 606). The Court addresses below its reasons for granting a stay rather than a transfer.

identity between cases.[5] Because it is a threshold issue in this case, the common question of the Master Policies' validity is sufficient to raise the possibility of substantial overlap between this case and the Delaware case.

AHMSI asserts that the resolution of the Delaware case can have no impact on this case because AHMSI is not a party to the Delaware case and would not be bound by any ruling issued by the Delaware court. However, the fact that AHMSI is not a party to the Delaware case does not undermine the appropriateness of a transfer (or, in this case, a stay) in light of the circumstances.[6] "Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action."[7] AHMSI's arguments to the contrary, Triad could join AHMSI as a defendant in the Delaware case,[8] or AHMSI could intervene in the Delaware case.[9] Indeed, Triad asserts that AHMSI appeared through counsel at a March 2010 hearing in the Delaware court and stated to the judge that either AHMSI or its clients, who are the owners of securities backed by the mortgages insured by Triad, planned to seek to intervene in the Delaware case.[10]

While a decision in the Delaware case would not be binding upon AHMSI if it is not joined, this Court's concurrent consideration of the validity of the Master Policies would duplicate judicial effort and may produce precisely the type of contrary results that the first-to-

---

[5] *Save Power*, 121 F.3d at 950.
[6] *Accord id.* at 951.
[7] *Id.* (citations omitted).
[8] AHMSI argues that Triad cannot sue AHMSI in the Delaware court because a Texas insured may not be sued over a Texas insurance policy outside of Texas without its consent. *See* AHMSI's Response at 11 (citing Tex. Ins. Code § 982.303). This argument lacks merit because AHMSI is a Delaware corporation that services Texas insureds. It is not itself a Texas insured.
[9] *See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 731 n.5 (5th Cir. 1985) (noting that incomplete identity of parties does not mandate that two "essentially identical" actions remain pending simultaneously, where the missing parties probably could be made parties to the action in the forum in which complete relief could be had).
[10] *See* Triad's Reply at 2.

file rule manifestly seeks to avoid.[11]  Therefore, to "maximize judicial economy and minimize embarrassing inconsistencies," the proper course of action for this Court is to "prophylactically refus[e] to hear a case raising issues that might substantially duplicate those raised by a case pending in another court."[12]

Ordinarily, this conclusion would lead the Court to transfer this case to the Delaware court.  However, subject matter jurisdiction, personal jurisdiction, and venue must all properly lie in the transferee court before a case can be transferred.[13]  The record before the Court is not sufficient for the Court to conclude that the Delaware court has personal jurisdiction over Triad.

28 U.S.C. § 1404(a), which governs all transfers, provides that "in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The first determination to make in applying the provisions of § 1404(a) is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."[14]  The Supreme Court explained that requirement in *Hoffman v. Blaski*, stating:

> If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district "where [the action] might have been brought."  If he does not have that right, independently of the wishes of defendant, it is not a district "where it might have been brought," and it is immaterial that the defendant subsequently [makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction of some other forum]."[15]

---

[11] *West Gulf*, 751 F.2d at 729.
[12] *Cadle Co.*, 174 F.3d at 604 (emphasis omitted).
[13] *See, e.g., AT&T Co. v. Milgo Electronic Corp.*, 428 F. Supp. 50, 52 (S.D.N.Y. 1977) (explaining that the "threshold requirement" for a change of venue under § 1404(a) is whether, at the time the second complaint was filed, the defendants were amenable to personal jurisdiction in the first court, whether subject matter jurisdiction existed there, and whether venue was appropriate).
[14] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted).
[15] 363 U.S. 335, 344 (1960) (quoting *Blaski v. Hoffman*, 260 F.2d 317, 321 (7th Cir. 1958); *Behimer v. Sullivan*, 261 F.2d 467, 469 (7th Cir. 1958)).

Triad is an Illinois corporation with its principal place of business in North Carolina. The conduct at issue in this case took place in Texas. No connection between Triad and Delaware is alleged apart from Triad's motion to transfer this case to Delaware, and Triad's instigation of the Delaware case against AHM. However, as explained by the Supreme Court in *Hoffman*, Triad's desire to waive its personal jurisdiction defense has no bearing on whether AHMSI's case "might have been brought" in Delaware.[16] Nor is Triad's role as plaintiff in the Delaware case sufficient to establish personal jurisdiction.[17] Triad has elected to avail itself of the benefits of the Delaware court as a plaintiff in the Delaware case, and has therefore surrendered personal jurisdictional objections to any counterclaims that the AHM defendants wish to assert against it.[18] However, at the time this suit was filed, AHMSI could not have counterclaimed against Triad in the Delaware court, because AHMSI was not a defendant in that case.[19] And while it is unclear whether AHMSI's option to intervene in the Delaware case satisfies the "where it might

---

[16] *Id.*; *see also Chirife v. St. Jude Med., Inc.*, No. 6:08-cv-480, 2009 U.S. Dist. LEXIS 50482, at *4 (E.D. Tex. June 16, 2009) (following *Hoffman* in rejecting an interpretation of § 1404(a) that would empower a court to transfer an action to a district desired by the defendants, where the defendants were willing to consent to jurisdiction and venue before their requested forum); *Wolf Designs, Inc. v. Donald McEvoy Ltd.*, *Inc.*, 355 F. Supp. 2d 848, 852 (N.D. Tex. 2005) (Fish, C.J.) (same).

[17] *See, e.g., U.S. Ship Mgmt. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 935 n.25 (E.D. Va. 2005) (rejecting the argument that a second-filed claim "might have been brought" in the District of Columbia because the defendant had already consented to jurisdiction as an intervenor in two related cases brought there).

[18] *See, e.g., Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) ("The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff." (citations omitted)); *A. J. Industries, Inc. v. U.S. District Court for the Central Dist. of Cal.*, 503 F.2d 384, 387 (9th Cir. 1974) (holding, after considering *Hoffman*, that "the ability to raise the subject matter of a suit in the transferor district by counterclaim in the transferee district will, as a general proposition, satisfy the 'where it might have been brought' requirement of 28 U.S.C. § 1404(a)"); *Wellington Transp., Inc. v. Granite State Packing Co.*, Civ. No. 84-2098, 1984 U.S. Dist. LEXIS 21102, at *4-5 (D. Mass. Dec. 19, 1984) (same); *AT&T Co.*, 428 F. Supp. at 54-55 (same); *Leesona Corp. v. Duplan Corp.*, 317 F. Supp. 290, 293 (D.R.I. 1970) (same).

[19] *Accord AT&T Co.*, 428 F. Supp. at 55 (holding, in this exact same situation, that a transfer was not appropriate because the plaintiff's ability to assert a claim against the defendant in the transferee court depended on a contingency that had not taken place—namely, plaintiff's joinder as a defendant in the original action); *Phillips Petroleum Co. v. Fed. Energy Admin.*, 435 F. Supp. 1234, 1238 (D. Del. 1977) (distinguishing *A. J. Industries*'s holding on counterclaims, because in *A. J. Industries*, both parties were already litigating against one another in the transferee district, and thus only certain claims, and not parties in any real sense, were transferred). Obviously, a party must be joined as a defendant before it can raise a counterclaim. *Cf. Wellington Transp.*, 1984 U.S. Dist. LEXIS at *5 ("Obviously, an action must be filed before a defendant may raise a counterclaim."); *3M v. Ansul Co.*, 1978 U.S. Dist. LEXIS 17935, at *4-5 (N.D. Ill. May 4, 1978) (same).

have been brought" requirement of § 1404(a), the Court finds persuasive the reasoning of the district court in *Phillips Petroleum Co. v. Federal Energy Administration*, which rejected that position as being at odds with the plain meaning of the statute, which speaks of "bringing" an action, and with the Supreme Court's opinion in *Hoffman*, which speaks of a plaintiff's "right" to sue.[20]

The facts before the Court are thus insufficient to establish that the Court could properly transfer this case to the Delaware court under 28 U.S.C. § 1404(a). The Court therefore GRANTS a stay in this case, rather than a transfer. If Triad believes itself to be subject to personal jurisdiction in the Delaware court, it may file supplemental evidence addressing that issue and request that the Court reconsider a transfer of this case to the Delaware court.[21] Furthermore, notwithstanding the stay imposed in this case, either party may file motions on the limited issue of whether Triad may deny the fifteen purportedly late-filed insurance claims.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Stay or Transfer is GRANTED to the extent that this case is hereby STAYED pending the Delaware court's resolution of the validity of the Master Policies. Within seven days of the date of the Delaware court's decision, Triad shall advise AHMSI of the result, if AHMSI is not a party to that case, and within fourteen days of the decision, the parties to this case shall file a joint report advising this Court as to the

---

[20] *See Phillips Petroleum*, 435 F. Supp. at 1237-38 (stating that "the 'bringing' of an action is commonly understood as the 'initiating' or 'starting' of an action," and stating that "dependence on other parties and a Court's discretion" inherent in permissive intervention "is inconsistent with *Hoffman v. Blaski* and its progeny which teach that a party must have a *right* to be in the transferee forum before transfer to that forum can be ordered" (emphasis added)); *see also N.Y. Central R.R. Co. v. United States*, 200 F. Supp. 944, 948 (2d Cir. 1961) (stating, in dicta, that the argument that the ability to maintain a claim as an intervenor is not enough for transfer under § 1401(a) "is not to be readily dismissed, especially in view of the tendency to give a rather literal reading of § 1404(a) evidenced by Hoffman.").
[21] *See Chirife*, 2009 U.S. Dist. LEXIS at at *3-4 (the defendant must prove both personal jurisdiction and venue in the transferee court); *Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04-CV-629, 2004 U.S. Dist. LEXIS 16373, at *7 (E.D.N.Y. July 22, 2004) ("The party seeking transfer has the burden of establishing that the case could be brought in the transferee district." (citations omitted)).

outcome, and as to their views on how the Court should proceed with this case, explaining their differences if they do not agree. The parties shall also file an interim status report within ninety days of this Order, advising the Court as to the progress made in the Delaware case. If the Delaware court has not decided the validity issue within ninety days of the date of this Order, any party in this case may seek to have the stay lifted.

**SO ORDERED.**

May 26, 2010.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**